UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


KHADIJAH ABUBAKARI,

ANAS ABUBAKARI,

U.A.,

       Plaintiffs,

v.                                 Case No. 3:25-CV-01863 (KAD)


STATE OF CONNECTICUT,

DEPARTMENT OF CHILDREN AND FAMILIES,

RENEE BEVACQUA,

TRISHA FALCONE,

TROY ZANE,

SHERRI HAWKINS,                    APRIL,7TH 2026

SEON BAGOT,

ELIZABETH SCHENKER,

       Defendants.


**MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Plaintiffs move for leave to file a Third Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). The proposed Third Amended Complaint Is attached as **Exhibit A.**


**GROUNDS**

1. **ORGANIZATION OF CLAIMS INTO SEPARATE COUNTS**

- 2 -

The Second Amended Complaint contains factual allegations supporting eight Distinct causes of action under federal and state law. The Third Amended Complaint Organizes these into separately-numbered counts as required by Federal Rule of Civil Procedure 10(b).

### 2. NO NEW FACTS OR PARTIES

The Third Amended Complaint contains the same factual allegations and parties As the Second Amended Complaint. No new facts or defendants are added.

### 3. AMENDMENT FREELY GIVEN

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall Be freely given when justice so requires. Plaintiffs filed the Second Amended Complaint on February 1, 2026. This motion is timely and amendment will not Prejudice Defendants.

### 4. NO PREJUDICE

Discovery is stayed. Defendants have not answered. Defendants will have full Opportunity to respond to the Third Amended Complaint.

CONCLUSION

**WHEREFORE,** Plaintiffs request that this Court grant leave to file the Third Amended Complaint attached as **Exhibit A.**

**Respectfully submitted,**

**/s/ Khadijah Abubakari**

**/s/ Anas Abubakari**

**/s/ U.A**

KHADIJAH ABUBAKARI

ANAS ABUBAKARI

U.A

**Plaintiffs, Pro Se**

1926 Brian Circle

Bear, DE 19701

470-560-2640

Yolandajefferson52@yahoo.com

### CERTIFICATION

I hereby certify that on APRIL 7TH 2026 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Courts system.

**Attorney John Tucker**

165 Capital Ave

Hartford CT 06106

HOWD & LUDORF LLC

**Attorney Katherine Rule & Robert Taylor**

100 Great Meadow Rd Ste 201

Wethersfield, CT 06109

**Respectfully submitted,**

**/s/ Khadijah Abubakari**

**/s/ Anas I. Abubakari**

**/s/ U.A**

**Plaintiffs, pro se**

 KHADIJAH ABUBAKARI ET AL.

1926 BRIAN CIR

BEAR DE 19701

470-560-2640

YOLANDAJEFFERSON52@YAHOO.COM

 **PLAINTIFF'S**

 ANAS ABUBAKARI

KHADIJAH ABUBAKARI

U.A


**DEFENDANTS**

STATE OF CONNECTICUT

DEPARTMENT OF CHILDEN AND

FAMILIES

SHERRI HAWKINS

TROY ZANE

TRICIA FALCONE

RENEE BEVACQUA

SEON BAGOT

ELIZABETH SCHENKER


**DEFENDANTS ATTORNEY'S**

HOWD & LUDORF LLC.

Attorney John Tucker

165 Capital Ave

Hartford CT 06106

 Attorney Katherine Rule & Robert Taylor

100 Great Meadow Rd Ste 201

Wethersfield, CT 06109


**Plaintiffs, pro se**

KHADIJAH ABUBAKARI ET AL.

Anas I. Abubakari

U.A

1926 BRIAN CIR

BEAR DE 19701

470-560-2640

YOLANDAJEFFERSON52@YAHOO.COM

**Dated: April 7, 2026**

**THIRD AMENDED COMPLAINT (EXHIBIT A)**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**KHADIJAH ABUBAKARI,**

**ANAS ABUBAKARI,**

**U.A.,**

      **Plaintiffs,**

**v.**                                                    **Case No. 3:25-CV-01863 (KAD)**

**STATE OF CONNECTICUT,**

**DEPARTMENT OF**

**CHILDREN AND FAMILIES,**

**RENEE BEVACQUA,**

**TRISHA FALCONE,**

**TROY ZANE,**

**SHERRI HAWKINS,**

**SEON BAGOT,**

**ELIZABETH SCHENKER,**

      **Defendants.**                          **April , 2026**

**THIRD AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

This civil rights action arises from Defendants' violations of Plaintiffs' constitutional and statutory rights from 2008 through 2026. Plaintiffs seek declaratory relief, compensatory damages, punitive damages, and attorney fees under 20 U.S.C. § 1400 et seq., 42 U.S.C. §§ 1983, 1985, 1988, Connecticut General Statutes, and the United States Constitution.

## II. PARTIES

1. Plaintiff Khadijah Abubakari is the mother of minor Plaintiff U.A. She resides at 1926 Brian Circle, Bear, Delaware 19701.

2. Plaintiff Anas Abubakari is the stepfather of minor Plaintiff U.A. He resides at 1926 Brian Circle, Bear, Delaware 19701.

3. Plaintiff U.A. is a minor with disabilities protected under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401(3). He received special education services from Hamden Public Schools until February 13, 2018.

4. Defendant State of Connecticut is sued as the recipient of federal IDEA funds pursuant to 20 U.S.C. § 1400 et seq., and as the governmental entity responsible for the Department of Children and Families.

5. Defendant Department of Children and Families is a Connecticut state agency responsible for child welfare investigations pursuant to Connecticut General Statutes Chapter 319t.

6. Defendant Renee Bevacqua is an Assistant Attorney General who prosecuted

the 2018 neglect case against Plaintiffs. She is sued in her individual capacity pursuant to 42 U.S.C. § 1983.

7. Defendant Trisha Falcone is a DCF Program Supervisor who approved the substantiation and prosecution of Plaintiffs. She is sued in her individual capacity pursuant to 42 U.S.C. § 1983.

8. Defendant Troy Zane is a DCF Investigative Social Worker Supervisor who directed and approved the substantiation of educational neglect against Plaintiffs. He is sued in his individual capacity pursuant to 42 U.S.C. § 1983.

9. Defendant Sherri Hawkins is a DCF Intake Supervisor who processed and approved the false report against Plaintiffs. She is sued in her individual capacity pursuant to 42 U.S.C. § 1983.

10. Defendant Seon Bagot is an Assistant Attorney General who made material misrepresentations to the Connecticut Claims Commissioner. He is sued in his individual capacity pursuant to 42 U.S.C. § 1983.

11. Defendant Elizabeth Schenker is a school social worker employed by Hamden Public Schools who filed a false report of educational neglect against Plaintiffs on March 22, 2018. She is sued in her individual capacity pursuant to 42 U.S.C. § 1983.

### III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction).

13. This action arises under the United States Constitution, 20 U.S.C. § 1400 et seq. (Individuals with Disabilities Education Act), 42 U.S.C. §§ 1983, 1985, and 1988.

14. This Court has supplemental jurisdiction over state law claims pursuant

to 28 U.S.C. § 1367(a).

15. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events occurred in this District.

16. Sovereign immunity is waived. The Connecticut Claims Commissioner authorized suit against the State of Connecticut pursuant to Connecticut General Statutes § 4-160 by decision dated May 6, 2024 in Claim No. 25677.

17. Individual capacity defendants are sued pursuant to 42 U.S.C. § 1983 and are not entitled to Eleventh Amendment immunity. 42 U.S.C. § 1983; U.S. Const. amend. XI.

## IV. QUALIFIED IMMUNITY DEFENSES

18. **Individual defendants are not entitled to qualified immunity because:**

   a. The constitutional rights violated were clearly established at all relevant times;

   b. Defendants' conduct was objectively unreasonable;

   c. Defendants knew or should have known their conduct violated clearly established law;

   d. Defendants acted with deliberate indifference to Plaintiffs' constitutional rights;

   e. Defendants engaged in fraud, misrepresentation, and conspiracy, which are not entitled to immunity protections;

   f. Defendants prosecuted Plaintiffs without probable cause;

   g. Defendants disclosed confidential records in knowing violation of multiple federal and state confidentiality statutes.

19. To the extent Defendants assert qualified immunity, Plaintiffs have pled

- 8 -

sufficient facts to overcome qualified immunity at the pleading stage, and the issue should be resolved after discovery on summary judgment or at trial.

## V. STATUTE OF LIMITATIONS DEFENSES

20. To the extent any claims are alleged to be time-barred, Plaintiffs assert **multiple bases for tolling the statute of limitations:**

a. Fraudulent concealment: Defendants concealed material facts regarding the 2008-2009 events, including DCF's cover-up of Care4Kids screening failures and retaliation against Plaintiff Khadijah Abubakari for reporting suspected abuse. Plaintiffs did not discover the full extent of Defendants' concealment until the January 7, 2021 unauthorized disclosure revealed the complete 2008-2014 DCF records;

b. Continuing violation: Defendants' conspiracy to cover up state failures and target Plaintiffs continued from 2008 through 2026, with no substantial breaks, constituting a continuing violation that tolls the statute of limitations;

c. Reopening doctrine: Defendant Bevacqua affirmatively used the 2008-2009 cases in her April 30, 2018 Summary of Facts to establish Plaintiffs' "history" and support the 2018 prosecution, thereby reopening those cases for purposes of this litigation and waiving statute of limitations defenses;

d. Estoppel: Defendants are estopped from asserting statute of limitations defenses because they affirmatively relied on the 2008-2009 events as evidence against Plaintiffs while concealing the true circumstances of those events;

e. Claims in recoupment: Plaintiffs' claims arising from 2008-2009 events arise from the same transaction or occurrence as the 2018 prosecution and are asserted as compulsory counterclaims or claims in recoupment,

which are not barred by statute of limitations.

21. **The discovery of Defendants' fraudulent concealment occurred as follows:**

a. January 7, 2021: Unauthorized disclosure revealed complete 2008-2014 DCF records showing Plaintiff reported suspected abuse in November 2008, disclosed Care4Kids as the childcare provider, and DCF substantiated neglect against Plaintiff rather than investigating Care4Kids;

b. 2021-2026: Through ongoing Freedom of Information Act litigation, Plaintiffs continued to discover additional concealed facts about DCF's cover-up of Care4Kids screening failures and retaliation against Plaintiff;

c. The statute of limitations did not begin to run until Plaintiffs discovered or reasonably should have discovered Defendants' fraudulent concealment, which occurred no earlier than January 2021 and continued through 2026.

## VI. FACTUAL ALLEGATIONS

## A. U.A.'S DISABILITIES AND SPECIAL EDUCATION NEEDS

22. U.A. has been diagnosed with attention deficit disorder, dyslexia, dysgraphia, and social pragmatic disorder.

23. U.A. is a child with disabilities within the meaning of 20 U.S.C. § 1401(3).

24. From 2016 through February 2018, U.A. attended Hamden Public Schools and received special education services pursuant to an Individualized Education Program.

25. U.A.'s IEP required speech and language therapy, keyboarding instruction, assistive technology, and one-on-one aide support.

**B. HAMDEN PUBLIC SCHOOLS FAILED TO IMPLEMENT U.A.'S IEP**

26. From 2016 through February 2018, Hamden Public Schools failed to implement critical components of U.A.'s IEP including speech therapy, keyboarding instruction, and one-on-one aide support.

27. This failure violated 20 U.S.C. § 1401(9), 20 U.S.C. § 1414(d), and 34 C.F.R. § 300.323.

28. As a result, U.A. regressed from grade level to three to four grade levels behind his peers.

**C. IMPROPER SEGREGATION IN RESOURCE CLASSROOM**

29. Hamden Public Schools segregated U.A. in a resource classroom rather than providing supplementary aids and services in general education classes.

30. This violated the least restrictive environment requirement of 20 U.S.C. § 1412(a)(5) and 34 C.F.R. § 300.114.

31. U.A. suffered stigma, bullying, isolation, and emotional distress from segregation.

**D. FEBRUARY 13, 2018 PPT MEETING**

32. On February 13, 2018, a Planning and Placement Team meeting was held to review U.A.'s IEP.

33. Present at the meeting were Plaintiffs Khadijah Abubakari and Anas Abubakari, school staff, and Defendant Elizabeth Schenker.

34. The PPT reviewed data showing U.A. was three to four grade levels behind despite being in seventh grade.

35. Plaintiffs requested reinstatement of the one-on-one aide, additional specialized instruction, evaluation for outplacement, and revision of the IEP.

36. The PPT refused all requests and offered no alternative remedies.

37. This violated 34 C.F.R. § 300.324(b)(1)(ii) which requires IEP revision when a child is not making expected progress.

38. The PPT failed to provide Prior Written Notice as required by 34 C.F.R. § 300.503.

## E. PLAINTIFFS WITHDRAW U.A. FOR HOME INSTRUCTION

39. At the conclusion of the February 13, 2018 meeting, Plaintiffs informed the PPT they were withdrawing U.A. for home instruction pursuant to Connecticut General Statutes § 10-184.

40. Defendant Schenker was present and personally heard this announcement.

41. On February 14, 2018, Plaintiffs formally withdrew U.A. from Hamden Public Schools and began providing home instruction.

42. Connecticut General Statutes § 10-184 authorizes parents to provide home instruction as an alternative to public school attendance.

## F. SCHENKER'S FALSE AND RETALIATORY DCF REPORT

43. On March 22, 2018, thirty-five days after the February 13, 2018 PPT meeting, Defendant Schenker filed a report with DCF alleging educational neglect.

44. Schenker's report deliberately omitted that Plaintiffs had lawfully withdrawn U.A. for home instruction.

45. Connecticut General Statutes § 17a-101a(b) requires mandated reporters to report suspected neglect within twelve hours.

46. Schenker's thirty-five day delay violated Connecticut General Statutes § 17a-101a(b).

47. The delay demonstrates the report was retaliatory, not based on genuine child safety concern.

48. Schenker violated 42 U.S.C. § 5106a which requires immediate reporting

under federally-approved child protection systems.

## G. DCF INVESTIGATION AND SUBSTANTIATION WITHOUT PROBABLE CAUSE

49. DCF assigned investigator Emily Grabell to investigate Schenker's report.

50. Defendants Hawkins, Zane, and Falcone supervised and approved the investigation.

51. The investigation failed to verify whether U.A. was receiving lawful home instruction pursuant to Connecticut General Statutes § 10-184.

52. DCF substantiated educational neglect without reasonable cause as required by Connecticut General Statutes § 17a-101g.

53. Connecticut General Statutes § 46b-120(4) defines educational neglect as failure to provide education. Lawful homeschooling is not educational neglect.

## H. BEVACQUA'S PROSECUTION WITHOUT PROBABLE CAUSE

54. Defendant Bevacqua, as Assistant Attorney General, filed a neglect petition in Superior Court in 2018.

55. Bevacqua failed to review PPT records documenting the lawful withdrawal before filing the petition.

56. Bevacqua failed to verify compliance with Connecticut General Statutes § 10-184.

57. No probable cause existed to prosecute parents providing lawful home instruction.

58. In October 2018, after Plaintiffs presented evidence of lawful homeschooling, Bevacqua withdrew the petition.

59. The withdrawal demonstrates the prosecution lacked merit and should never have been initiated.

## I. UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL DCF RECORDS

60. On January 7, 2021, the State disclosed Plaintiffs' confidential DCF

records to Howd & Ludorf, LLC, a private law firm representing Defendant Schenker.

61. The disclosure violated Connecticut General Statutes § 17a-28 which prohibits disclosure of DCF records except as specifically authorized by statute.

62. The disclosure violated Connecticut General Statutes § 17a-101k which requires confidentiality of unsubstantiated findings.

63. The disclosure violated 42 U.S.C. § 5106a which requires confidentiality protections in child welfare systems receiving federal CAPTA funds.

64. The disclosed records contained unredacted information identifying U.A. as a victim of sexual assault.

65. U.A. is protected by a ninety-nine year protective order issued by the Office of the State's Attorney for the Judicial District of Danielson.

66. The disclosure violated Connecticut General Statutes § 54-86e which absolutely prohibits disclosure of sexual assault victim identity.

67. The disclosure violated 34 U.S.C. § 12291(b)(2) (Violence Against Women Act confidentiality requirements).

68. The disclosure violated 18 U.S.C. § 3771(a)(8) (Crime Victims' Rights Act privacy protections).

69. The disclosure violated U.A.'s Fourth Amendment right to privacy. U.S. Const. amend. IV.

70. The disclosure violated U.A.'s Fourteenth Amendment substantive due process rights. U.S. Const. amend. XIV.

71. The January 7, 2021 disclosure contained false and misleading information regarding Plaintiff Anas Abubakari, falsely associating him with criminal conduct when he was not a subject of the DCF investigation and was not named in the 2018 neglect petition filed in New Haven Juvenile Court.

72. The disclosure also contained unredacted names and ages of Plaintiffs' two other minor children who were never subjects of DCF investigation, were never

alleged to be neglected, and were not named in the 2018 neglect petition.

73. These two children had no connection to the allegations against Plaintiffs and had no involvement in the 2018 case, yet their confidential personal information was disclosed to Howd & Ludorf, LLC without authorization, necessity, or legal basis.

74. The disclosure of the two children's names and ages violated Connecticut General Statutes § 17a-28 which prohibits disclosure of DCF records concerning children who are not subjects of investigation or court proceedings.

75. The disclosure of false information regarding Anas Abubakari constitutes defamation and false light invasion of privacy, subjecting him to reputational harm by falsely associating him with criminal conduct.

76. Neither Anas Abubakari nor the two other children had any due process opportunity to contest the disclosure or correct false information before it was provided to adverse parties.

77. The State's disclosure of information regarding three children and one adult who were not subjects of the 2018 case demonstrates reckless disregard for privacy rights and confidentiality laws.

78. The disclosure contained unsubstantiated allegations regarding Plaintiff Khadijah Abubakari's mental health that were included in the 2018 petition as speculation, were never proven or founded by DCF, yet were presented in the disclosure to adverse parties as established fact.

79. The State's misrepresentation of unproven speculation as fact was intended to portray Khadijah Abubakari as an unfit mother when the 2018 neglect petition was withdrawn by the State and no finding of neglect was ever entered against her.

80. The disclosure's presentation of unsubstantiated mental health allegations as fact constitutes defamation and false light invasion of privacy, causing severe reputational harm and emotional distress.

## J. BAGOT'S MISREPRESENTATIONS TO CLAIMS COMMISSIONER

81. During the Claims Commissioner proceedings from 2018 through 2024, Defendant Bagot and other state attorneys misrepresented the nature and disposition of the 2018 neglect petition.

82. The misrepresentations prolonged the Claims Commissioner process and delayed Plaintiffs' ability to file suit.

83. On May 6, 2024, the Claims Commissioner issued a decision in **Claim No. 25677** finding that the State could be liable and authorizing Plaintiffs to file suit pursuant to Connecticut General Statutes § 4-160.

## K. BEVACQUA'S KNOWING MISUSE OF 2008-2009 CASES TO CONCEAL STATE FAILURES

84. On April 30, 2018, Defendant Renee Bevacqua, as Assistant Attorney General, filed a Summary of Facts Substantiating Alleged Neglect in Superior Court for Juvenile Matters.

85. **Paragraph 1 of Bevacqua's Summary stated:** "Ms. Abubakari has a history with the Department dating back to 2008, including a substantiation for physical neglect of Uriah."

86. **Paragraph 2 stated:** "In January of 2009 Uriah was adjudicated neglected at the Superior Court for Juvenile Matters in Hartford and committed to the Department on 2/11/09."

87. By affirmatively using the 2008-2009 cases in her 2018 petition to establish "history" and support the educational neglect prosecution, Bevacqua reopened those cases for litigation and waived any statute of limitations defenses regarding events from that period.

88. **Bevacqua knew or had access to records showing the true nature of the**

**2008-2009 cases, including:**

    a. In November 2008, Plaintiff Khadijah Abubakari took U.A. to the emergency room after suspecting he had been violated, and insisted that DCF investigate;

    b. Plaintiff disclosed to DCF that U.A. had been in Care4Kids subsidized childcare;

    c. Rather than investigating the Care4Kids provider, DCF substantiated neglect against Plaintiff—the protective mother who had demanded investigation;

    d. The 2009 case ended with reunification and withdrawal of the petition, meaning Plaintiffs prevailed;

    e. In July 2014, Plaintiff again reported that U.A. had disclosed abuse that occurred at the Care4Kids facility;

    f. DCF investigated and stated in October 2014 that "the Department believes that the events occurred" and that U.A. "made a consistent disclosure";

    g. Criminal prosecution followed, resulting in a 99-year Standing Criminal Protective Order issued July 23, 2016 (case number WWM CR15 0156011 T) protecting U.A.;

    h. The 2008-2009 cases arose from DCF's retaliation against a protective mother and DCF's cover-up of Care4Kids screening failures.

89. **Despite knowing this information, or having access to records containing it, Bevacqua deliberately misrepresented the 2008-2009 cases in her 2018 Summary by:**

    a. Referencing the 2008 substantiation and 2009 adjudication to suggest Plaintiffs had a "history" of neglect;

    b. **Omitting** that the 2009 case ended with reunification and withdrawal;

c. **Omitting** that the 2008-2009 cases arose from Plaintiff being a protective mother who reported suspected abuse;

d. **Omitting** that the suspected abuse was later judicially confirmed through criminal prosecution and a 99-year protective order;

e. **Omitting** that DCF had retaliated against Plaintiff rather than investigating state program failures.

90. Bevacqua's knowing misrepresentation of the 2008-2009 cases demonstrates that the 2018 prosecution was undertaken in bad faith, with knowledge of DCF's prior misconduct, and with intent to continue the pattern of targeting Plaintiffs rather than acknowledging state responsibility for failures.

91. By affirmatively relying on the 2008-2009 cases as evidence of Plaintiffs' unfitness, Bevacqua and the State are estopped from asserting statute of limitations defenses to Plaintiffs' claims arising from those same cases.

92. The State cannot use the 2008-2009 cases as a sword to attack Plaintiffs while simultaneously using statute of limitations as a shield to prevent Plaintiffs from presenting the truth about those cases.

93. When Bevacqua filed the April 30, 2018 Summary containing references to 2008-2009, she reopened those cases for purposes of this litigation, making Plaintiffs' claims regarding those events timely and proper as compulsory counterclaims or claims in recoupment.

94. **The January 7, 2021 unauthorized disclosure to Howd & Ludorf revealed the complete 2008-2014 DCF records, including:**

a. Plaintiff's November 2008 emergency room visit and demand that DCF investigate suspected abuse;

b. Plaintiff's disclosure of the Care4Kids provider as the location where U.A. spent time;

c. DCF's December 2008 substantiation against Plaintiff rather than

investigation of Care4Kids;

d. The 2014 DCF investigation concluding that "the Department believes that the events occurred";

e. Evidence of the Care4Kids connection that DCF had concealed since 2008.

95. The 2021 disclosure revealed for the first time that DCF had deliberately concealed Care4Kids screening failures, retaliated against a protective mother, and maintained this cover-up for thirteen years, constituting fraudulent concealment that tolls the statute of limitations for related claims.

96. Bevacqua's 2018 use of the 2008-2009 cases, combined with the 2021 disclosure revealing the concealed truth about those cases, provides both legal and equitable grounds for joining Plaintiffs' claims arising from 2008-2009 events to this action.

## VII. CLAIMS FOR RELIEF

**COUNT I**

**VIOLATIONS OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT 20 U.S.C. § 1400 ET SEQ.**

**Against Defendants State of Connecticut and Elizabeth Schenker**

97. Plaintiffs incorporate all preceding paragraphs.

98. U.A. is a child with a disability within the meaning of 20 U.S.C. § 1401(3).

99. U.A. was entitled to a Free Appropriate Public Education pursuant to 20 U.S.C. § 1412(a)(1).

100. Hamden Public Schools failed to implement U.A.'s IEP in violation of 20 U.S.C. § 1401(9), 20 U.S.C. § 1414(d), and 34 C.F.R. § 300.323.

101. Hamden Public Schools violated the least restrictive environment requirement of 20 U.S.C. § 1412(a)(5) and 34 C.F.R. § 300.114 by improperly segregating U.A.

102. The PPT violated 34 C.F.R. § 300.324(b)(1)(ii) by refusing to revise the

IEP despite documented lack of progress.

103. The PPT violated 34 C.F.R. § 300.503 by failing to provide Prior Written Notice.

104. Defendant Schenker retaliated against Plaintiffs for exercising IDEA rights by filing a false DCF report.

105. The causal connection between protected IDEA advocacy and the adverse action is established by temporal proximity and Schenker's deliberate omission of the withdrawal fact.

106. Schenker's thirty-five day delay in reporting violated Connecticut General Statutes § 17a-101a(b) and demonstrates premeditated retaliation.

107. Plaintiffs are entitled to compensatory education, reimbursement for private services, compensatory damages, punitive damages, and mandatory attorney fees pursuant to 20 U.S.C. § 1415(i)(3)(B) and 20 U.S.C. § 1415(i)(3)(G).

COUNT II

DEPRIVATION OF PARENTAL RIGHTS

42 U.S.C. § 1983

Against Defendants Schenker, Bevacqua, Zane, Falcone, Hawkins, and State of Connecticut

108. Plaintiffs incorporate all preceding paragraphs.

109. Defendants acted under color of state law.

110. Plaintiffs have a fundamental right to direct the upbringing and education of their children protected by the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV.

111. Connecticut General Statutes § 10-184 recognizes parents' right to provide home instruction.

112. Defendant Schenker violated Plaintiffs' parental rights by filing a false report alleging educational neglect when she knew U.A. was receiving lawful home

instruction.

113. Defendant Bevacqua violated Plaintiffs' parental rights by prosecuting them for educational neglect without probable cause.

114. Defendants Zane, Falcone, and Hawkins violated Plaintiffs' parental rights by substantiating and approving prosecution without verifying basic facts.

115. The investigation and prosecution lacked probable cause because Connecticut General Statutes § 10-184 authorizes home instruction and Connecticut General Statutes § 46b-120(4) does not encompass lawful homeschooling.

116. Defendants' conduct was objectively unreasonable and violated clearly established constitutional rights.

117. Defendants are not entitled to qualified immunity because their conduct was objectively unreasonable and violated clearly established law.

118. Plaintiffs are entitled to compensatory damages, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

**COUNT III**

**SUPERVISORY LIABILITY**

**42 U.S.C. § 1983**

**Against Defendants Falcone, Zane, and Hawkins**

119. Plaintiffs incorporate all preceding paragraphs.

120. Defendants Falcone, Zane, and Hawkins held supervisory positions with authority over the investigation and substantiation.

121. These defendants personally participated in constitutional violations by directing, approving, and supervising an investigation that lacked reasonable cause pursuant to Connecticut General Statutes § 17a-101g.

122. These defendants failed to ensure basic investigative steps including verification of Connecticut General Statutes § 10-184 compliance.

123. This failure demonstrates deliberate indifference to Plaintiffs' constitutional rights.

124. Defendants are not entitled to qualified immunity because their deliberate indifference to clearly established rights was objectively unreasonable.

125. Plaintiffs are entitled to compensatory damages, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## COUNT IV

## CONSPIRACY TO DEPRIVE CIVIL RIGHTS

## 42 U.S.C. § 1985

## Against All Defendants

126. Plaintiffs incorporate all preceding paragraphs.

127. Defendants conspired to deprive Plaintiffs of equal protection of the laws and equal privileges and immunities.

128. **The conspiracy included coordinated actions from 2008 through 2026 including:**

a. DCF's 2008 substantiation of neglect against Plaintiff Khadijah Abubakari—a protective mother who reported suspected abuse—rather than investigating state Care4Kids program failures;

b. Schenker's false report in 2018 deliberately omitting the withdrawal fact;

c. DCF's investigation without verifying Connecticut General Statutes § 10-184 compliance;

d. Bevacqua's prosecution without probable cause;

e. Bevacqua's affirmative use of the 2008-2009 cases in the 2018 Summary of Facts while concealing their true nature;

f. The State's unauthorized disclosure of confidential records in violation of Connecticut General Statutes § 17a-28, including false information

about Anas Abubakari and unredacted information about two other children who were not subjects of the case;

g. Bagot's misrepresentations to the Claims Commissioner.

129. These coordinated actions demonstrate an agreement to deprive Plaintiffs of constitutional rights.

130. Overt acts in furtherance of the conspiracy include the December 2008 substantiation against a protective mother, the March 22, 2018 false report, the 2018 substantiation and prosecution, the January 7, 2021 unauthorized disclosure containing false and irrelevant information, and the misuse of the 2008-2009 cases to conceal state failures.

131. Plaintiffs suffered injury including loss of parental rights, emotional distress, legal expenses, defamation, and ongoing harm.

132. Defendants are not entitled to qualified immunity for conspiracy to violate clearly established constitutional rights.

133. Plaintiffs are entitled to compensatory damages, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1985 and 42 U.S.C. § 1988.

**COUNT V**

**FIRST AMENDMENT RETALIATION**

**42 U.S.C. § 1983**

**Against Defendants Schenker and State of Connecticut**

134. Plaintiffs incorporate all preceding paragraphs.

135. Plaintiffs engaged in protected First Amendment activity by advocating for U.A.'s educational rights at the February 13, 2018 PPT meeting. U.S. Const. amend. I.

136. Defendant Schenker took adverse action by filing a false DCF report that resulted in investigation, prosecution, threat of custody loss, and substantial

legal expenses.

137. The causal connection is established by temporal proximity (thirty-five days) and Schenker's deliberate omission of facts known to her.

138. Defendant is not entitled to qualified immunity because retaliation for protected speech is clearly established as unconstitutional.

139. Plaintiffs are entitled to compensatory damages, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

**COUNT VI**

**UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL RECORDS**

**Connecticut General Statutes §§ 17a-28, 17a-101k, 54-86e**

**42 U.S.C. § 5106a, 34 U.S.C. § 12291, 18 U.S.C. § 3771**

**U.S. Const. amends. IV, XIV**

**Against Defendants State of Connecticut and Department of Children and Families**

140. Plaintiffs incorporate all preceding paragraphs.

141. The State's January 7, 2021 disclosure of DCF records to Howd & Ludorf violated Connecticut General Statutes § 17a-28 which prohibits disclosure except as authorized by statute.

142. The disclosure violated Connecticut General Statutes § 17a-101k which requires confidentiality of unsubstantiated findings.

143. The disclosure violated 42 U.S.C. § 5106a which requires confidentiality in child welfare systems receiving federal funds.

144. The disclosed records contained unredacted information identifying U.A. as a sexual assault victim in violation of Connecticut General Statutes § 54-86e which absolutely prohibits such disclosure.

145. The disclosure violated 34 U.S.C. § 12291(b)(2) (VAWA confidentiality requirements).

146. The disclosure violated 18 U.S.C. § 3771(a)(8) (Crime Victims' Rights Act).

147. The disclosure violated U.A.'s Fourth Amendment privacy rights. U.S. Const. amend. IV.

148. The disclosure violated U.A.'s Fourteenth Amendment substantive due process rights. U.S. Const. amend. XIV.

149. The disclosure was knowing, willful, and reckless.

150. The disclosure caused severe and irreparable harm to U.A. including loss of confidentiality, re-traumatization, and betrayal by the protective agency.

151. The disclosure contained false information regarding Plaintiff Anas Abubakari, falsely associating him with criminal conduct, when he was not a subject of the DCF investigation and was not named in the 2018 neglect petition nor 2008 or the 2009.

152. The disclosure contained unredacted names and ages of Plaintiffs' two other minor children who were never subjects of DCF investigation, were never alleged to be neglected, and were not involved in the 2018 case in any way.

153. The disclosure of these two children's confidential information violated Connecticut General Statutes § 17a-28, which prohibits disclosure of DCF records except as specifically authorized, and no authorization existed to disclose information about children who were not subjects of investigation or court proceedings.

154. The disclosure subjected Anas Abubakari to defamation and false light invasion of privacy by falsely associating him with criminal conduct in records provided to adverse parties.

155. The disclosure violated the privacy rights of three minor children—U.A. and his two siblings—none of whom were subjects of the 2018 neglect petition filed in New Haven Juvenile Court.

156. The disclosure contained unsubstantiated allegations regarding Plaintiff

Khadijah Abubakari's mental health that were speculative, never founded, and presented in the disclosure as established fact, constituting defamation and false light invasion of privacy.

157. The State's disclosure of false and irrelevant information regarding family members who were not subjects of the case demonstrates willful, wanton, and reckless disregard for privacy rights and statutory confidentiality protections.

158. Defendants are not entitled to immunity for knowing violations of multiple federal and state confidentiality statutes.

159. Plaintiffs are entitled to compensatory damages, punitive damages, injunctive relief, and attorney fees pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 18 U.S.C. § 3771, and Connecticut General Statutes § 17a-28.


**COUNT VII**

**NEGLIGENCE AND NEGLIGENCE PER SE**

**Connecticut Common Law and Connecticut General Statutes § 17a-101a(b)**

**Against Defendant Schenker**

160. Plaintiffs incorporate all preceding paragraphs.

161. Defendant Schenker owed Plaintiffs a duty of care as a mandated reporter to report suspected neglect accurately and within the timeframe required by Connecticut General Statutes § 17a-101a(b).

162. **Schenker breached this duty by:**

   a. Failing to report within twelve hours as required by Connecticut General Statutes § 17a-101a(b);

   b. Waiting thirty-five days to file the report;

   c. Deliberately omitting material facts including the lawful withdrawal for home instruction;

   d. Failing to verify Connecticut General Statutes § 10-184 compliance.

163. Schenker's violation of Connecticut General Statutes § 17a-101a(b) constitutes negligence per se under Connecticut common law.

164. Schenker's breach proximately caused Plaintiffs' damages including the DCF investigation, prosecution, emotional distress, and legal expenses.

165. Plaintiffs are entitled to compensatory damages and punitive damages pursuant to Connecticut General Statutes § 4-160.


**COUNT VIII**

**FRAUD, MISREPRESENTATION, AND ABUSE OF PROCESS**

**Connecticut Common Law**

**Against Defendants Bagot and Bevacqua**

166. Plaintiffs incorporate all preceding paragraphs.

167. On April 30, 2018, Defendant Bevacqua filed a Summary of Facts that affirmatively relied on the 2008 substantiation and 2009 adjudication as evidence of Plaintiffs' "history" with DCF to support the 2018 educational neglect prosecution.

168. While the statements about the 2008 substantiation and 2009 adjudication were literally true, they constituted fraud by omission because Bevacqua deliberately omitted that the 2009 case ended with reunification and withdrawal in Plaintiffs' favor.

169. **Bevacqua knew or had access to records showing:**

   a. The 2009 case ended favorably for Plaintiffs;

   b. The 2008-2009 cases arose from Plaintiff Khadijah Abubakari being a
      protective mother who reported suspected abuse in November 2008;

   c. The suspected abuse was later judicially confirmed through **criminal
      prosecution and a 99-year protective order issued July 23, 2016;**

   d. The 2008-2009 cases involved DCF's retaliation and cover-up of Care4Kids
      screening failures.

170. Despite this knowledge, Bevacqua deliberately misrepresented the 2008-2009 cases by presenting them as evidence of Plaintiffs' neglect while omitting the favorable outcomes and true circumstances.

171. By affirmatively using the 2008-2009 cases in the 2018 Summary of Facts to establish Plaintiffs' "history" and support the prosecution, Defendant Bevacqua reopened those cases for purposes of this litigation.

172. Bevacqua's affirmative use of the 2008-2009 cases as evidence against Plaintiffs estops the State from asserting statute of limitations defenses to Plaintiffs' claims arising from those same events.

173. The State cannot use the 2008-2009 cases as a sword to attack Plaintiffs while simultaneously using statute of limitations as a shield to prevent Plaintiffs from presenting the truth about how those cases arose from DCF's retaliation against a protective mother and cover-up of Care4Kids screening failures.

174. Bevacqua's knowing misuse of the 2008-2009 cases for the improper purpose of concealing state failures and continuing the pattern of targeting Plaintiffs constitutes abuse of process under Connecticut common law.

175. During the Claims Commissioner proceedings from 2018 through 2024, Defendants Bagot and Bevacqua made material misrepresentations regarding the nature and disposition of the 2018 neglect petition.

176. These misrepresentations were made with knowledge of their falsity or reckless disregard for the truth.

177. The misrepresentations were intended to minimize the State's culpability and prolong the Claims Commissioner process.

178. Plaintiffs reasonably relied on the integrity of the Claims Commissioner process.

179. The misrepresentations proximately caused delay in Plaintiffs' ability to file suit and prolonged their suffering.

180. Defendants are not entitled to immunity for fraud, misrepresentation, and abuse of process.

181. Plaintiffs are entitled to compensatory damages and punitive damages pursuant to Connecticut common law and Connecticut General Statutes § 4-160.

## VIII. PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs respectfully request:**

A.   Declaratory judgment that Defendants violated Plaintiffs' rights under the United States Constitution, federal statutes, and Connecticut law;

B.   Compensatory education for U.A. including hour-for-hour replacement of missed IEP services;

C.   Reimbursement for private tutoring, therapy, assistive technology, and educational expenses;

D.   Compensatory damages for violation of constitutional rights, emotional distress, loss of parental rights, invasion of privacy for three minor children, defamation and false light invasion of privacy for Anas Abubakari and Khadijah Abubakari, and all other harms;

E.   Punitive damages against individual defendants for knowing, willful, and reckless violations;

F.   Mandatory attorney fees pursuant to 20 U.S.C. § 1415(i)(3)(G), 42 U.S.C. § 1988, and 18 U.S.C. § 3771;

G.   Costs of suit;

H.   Injunctive relief including:

   1. Order requiring destruction of improperly disclosed records;

   2. Order requiring DCF policy reforms protecting victim confidentiality;

   3. Order requiring Hamden policy reforms preventing retaliatory reports;

I.   Referral to appropriate authorities for criminal investigation of violations of Connecticut General Statutes §§ 17a-28b, 17a-101e, and 54-86e;

J.   Trial by jury on all claims so triable;

K.   Declaration that Defendants, by affirmatively using the 2008 substantiation and 2009 adjudication in the April 30, 2018 Summary of Facts to establish Plaintiffs' "history" and support the 2018 prosecution, reopened those cases for purposes of this litigation and are estopped from asserting statute of limitations defenses to Plaintiffs' claims arising from the 2008-2009 events;

L.   Such other relief as the Court deems just and proper.

**Respectfully submitted,**

**/s/ Khadijah Abubakari**

**/s/ Anas Abubakari**

KHADIJAH ABUBAKARI

ANAS ABUBAKARI

**Plaintiffs, Pro Se**

1926 Brian Circle

Bear, DE 19701

470-560-2640

yolandajefferson52@yahoo.com

Dated: April , 2026

### DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all claims so triable pursuant to Federal

Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution.

**/s/ Khadijah Abubakari**

**KHADIJAH ABUBAKARI**