**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ABUBAKARI, ET AL., *Plaintiffs*, | ) | CASE NO. 3:25-CV-1863 (KAD) |
| v. | ) | |
| STATE OF CONNECTICUT, ET AL., *Defendants*. | ) | SEPTEMBER 30, 2026 |

## MEMORANDUM OF DECISION

## RE: [88] STATE DEFENDANTS' MOTION TO DISMISS

Kari A. Dooley, United States District Judge:

In their now-operative Amended Complaint, ECF No. 86 [hereinafter "Oper. Compl."], Plaintiffs Khadijah Abubakari ("Ms. Abubakari"), Anas Abubakari ("Mr. Abubakari"), and U.A. bring various claims against Defendants the State of Connecticut, the Department of Children and Families ("DCF"), as well as individual-capacity claims against Assistant Attorney General ("AAG") Renee Bevacqua Bollier,[1] AAG Seon Bagot, DCF employees Tricia Falcone, Sherri Hawkins, and Troy Zane, and Elizabeth Schenker, a social worker employed by Hamden Public Schools ("HPS").[2] On February 20, 2026, the State of Connecticut, DCF, AAG Bevacqua Bollier, AAG Bagot, Falcone, Hawkins, and Zane (collectively, the "State Defendants") moved to dismiss the Operative Complaint. *See* Mot. Dismiss, ECF No. 88 [hereinafter "Mot."]. Plaintiffs oppose. Pls.' Mem. Law. Opp. Defs.' Mot. Dismiss, ECF No. 90 [hereinafter "Opp. Br."]. For the reasons set forth below, the State Defendants' Motion to Dismiss, ECF No. 88, is **GRANTED**, and the claims brought against the State of Connecticut and DCF are **DISMISSED WITHOUT**

[1] While Plaintiffs' pleadings and the case caption name AAG "Renee Bevacqua" as a Defendant, Defendant's motion papers indicate that her name is Renee Bevacqua Bollier. Although the caption has not been amended, the Court will refer to Defendant as AAG Bevacqua Bollier.

[2] Plaintiffs commenced this action in the District of Delaware. *See* Compl., ECF No. 1. Over Plaintiffs' objections, the case was transferred on motion of the Defendants to this Court. *See* Order, ECF No. 44.

**PREJUDICE**. The claims against AAG Bevacqua Bollier, AAG Bagot, Falcone, Hawkins, and Zane are **DISMISSED WITH PREJUDICE**.

**Allegations**

The following allegations are taken from the operative pleadings, which the Court accepts as true for the purposes of ruling on the Motion.

Mr. and Ms. Abubakari are the stepfather and mother, respectively, of U.A. Oper. Compl. 2.[3] U.A. attended HPS from approximately 2016 until February 2018 and was eligible for special education services pursuant to the IDEA. *Id*. at 2, 12. During the period in which U.A. attended HPS, HPS failed to implement portions of his individualized education program. *See id.* at 12–13. HPS also placed U.A. in a resource classroom, where he was isolated from nondisabled peers and subjected to stigma and bullying. *Id*. at 13–15. These decisions and deficiencies concerning his education caused U.A. to regress academically and suffer emotional harm. *Id*.

On February 13, 2018, Mr. and Ms. Abubakari attended a Planning and Placement Team ("PPT") meeting with HPS personnel, including Schenker. Oper. Compl. 15. There, Mr. and Ms. Abubakari requested additional services and support for U.A., including reinstatement of his one-on-one aide, additional reading and writing instruction, consideration of retention, consideration of outplacement, and support to address bullying and stigma. *Id*. The PPT refused these requests. *Id*. at 16. At the conclusion of the meeting, Mr. and Ms. Abubakari informed the PPT, including Schenker, that they were withdrawing U.A. from HPS effective February 14, 2018, and would provide home instruction. *Id*. at 16–17.

[3] Although referred to as a "minor child" in the pleadings, Plaintiffs identify that U.A. is "now approximately 20 years old," and proceeds *pro se* on his own behalf. *See* Oper. Compl. 1; *see also* Mot. Access to E Service, ECF No. 27.

On or about March 22, 2018, Schenker made a report to DCF alleging educational neglect. Oper. Compl. 17. Schenker reported that U.A. had not been in school since February 13, 2018, and referenced excessive absences, while omitting that Mr. and Ms. Abubakari had withdrawn U.A. for home instruction. *Id.*

DCF accepted the report for investigation. Oper. Compl. 21. Hawkins, a DCF Intake Supervisor, processed and approved the report without verifying whether U.A. had been lawfully withdrawn from school or whether his parents were providing him with home instruction. *Id.* Under Zane's supervision, a non-party DCF social worker conducted the ensuing investigation. *Id.* Zane directed and substantiated the reports of educational neglect without independently verifying Schenker's reports, investigating U.A.'s withdrawal, or determining whether U.A. was receiving education services at home. *Id.* at 21–22. Zane further approved the case for referral to the Office of the Attorney General ("OAG") to prosecute the neglect petition. *Id.* at 21. Thereafter, Falcone, a DCF Program Supervisor, gave final approval for DCF to refer the case to the OAG. *Id.* at 22–23.

Based on DCF's substantiation, the Office of the OAG, through AAG Bevacqua Bollier, filed a neglect petition in the Connecticut Superior Court for Juvenile Matters, alleging that U.A. was subjected to educational neglect. Oper. Compl. 23. AAG Bevacqua Bollier failed to conduct an independent investigation before filing and prosecuting the neglect petition and failed to determine whether the statutory elements of educational neglect were satisfied. *Id.* at 24–25. On or about October 17, 2018, the neglect petition was withdrawn. *Id.* at 25. In the seven months that the petition remained pending in the courts, Mr. and Ms. Abubakari "[l]ive[d] under the constant threat that their son could be removed from their custody." *Id.*

Following the withdrawal of the neglect petition, Mr. and Ms. Abubakari appealed DCF's substantiation of educational neglect. Oper. Compl. 25. At a December 2018 administrative hearing, Mr. and Ms. Abubakari presented evidence that U.A. had been lawfully withdrawn from HPS, that Mr. and Ms. Abubakari were providing home instruction, and that DCF had failed to verify those facts. *Id*. at 25–26. The hearing officer ruled in Mr. and Ms. Abubakari's favor, unsubstantiated the educational neglect finding, and directed DCF to reverse the substantiation in its records. *Id*. at 26. DCF later assessed the case for closure with determinations of "Safe" and "Low Risk." *Id*. Nevertheless, DCF thereafter failed to fully expunge, seal, or restrict the records associated with the now-unsubstantiated allegations of educational neglect. *Id*.

On or about January 7, 2021, DCF, through non-party paralegal Tina Pedreira and under the authority of non-party Commissioner Vanessa Dorantes, disclosed DCF records regarding Mr. and Ms. Abubakari and their children to Howd & Ludorf, LLC, the law firm representing Schenker in related litigation. Oper. Compl. 27. Although Mr. and Ms. Abubakari signed a limited authorization permitting disclosure of records from 2017 through 2019, DCF disclosed records beyond the scope of that authorization, including references to a 2009 DCF matter, pre-2017 historical information, post-2019 materials, and unredacted information concerning Mr. and Ms. Abubakari's children. *Id*. at 27–31. Howd & Ludorf and Attorney Jacqueline McMahon later used or re-disclosed those records in connection with summary judgment briefing in the prior litigation. *Id*. at 28–29.

After the withdrawal of the neglect petition and the reversal of DCF's substantiation, Ms. Abubakari filed a claim with the Connecticut Claims Commissioner in order to obtain authorization to sue the State. Oper. Compl. 34; *see* Ex. A, Oper. Compl., ECF No. 86–2 [hereinafter "Claims Comm'r Decision"]. During those proceedings, AAG Bagot and/or other

attorneys in the OAG mischaracterized the October 2018 withdrawal of the neglect petition as a dismissal on procedural or technical grounds, rather than a withdrawal by the prosecution. *Id*. AAG Bevacqua Bollier knew the true nature of the withdrawal because she had prosecuted the neglect petition and signed the withdrawal but failed to correct the misrepresentation. *Id*. at 35. On May 6, 2024, the Claims Commissioner issued a decision on Ms. Abubakari's claim. Claims Comm'r Decision. In the decision, the Claims Commissioner provided that "Ms. Abubakari is authorized to sue the State in negligence pursuant to Connecticut General Statutes section 4-160." *Id.* (emphasis omitted).

**Procedural History**

Plaintiffs filed their initial Complaint on April 24, 2025, *see* Compl., ECF No. 1, and amended the complaint on July 14, 2025, *see* Am. Compl., ECF No. 35. Thereafter, on November 14, 2025, both the State Defendants and Schenker moved to dismiss the claims brought against them. *See* Mot. Dismiss, ECF No. 57; Mot. Dismiss, ECF No. 58. During the pendency of those motions, Plaintiffs filed the Operative Complaint. Thereafter, on February 20, 2026, the State Defendants and Schenker moved to dismiss the claims brought against them. *See* Mot.; Def. Elizabeth Schenker's Mot. Dismiss Pls.' Second Amended Complaint, ECF No. 89. On March 17, 2026, Plaintiffs filed their opposition to Defendants' Motions to Dismiss, *see* Opp. Br., and on March 27, 2026, the State Defendants filed a reply brief, *see* Reply Obj. Mot. Dismiss, ECF No. 91.[4]

**Standard of Review**

[4] On April 7, 2026, Plaintiffs filed a Motion for Leave to File a Third Amended Complaint, ECF No. 99. The Court denied the motion on April 8, 2026, indicating that the Court would consider whether further leave to amend was appropriate during its adjudication of the instant Motions to Dismiss. *See* Order, ECF No. 100. As set forth below, the Court has concluded that leave to further amend the pleadings is not warranted.

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

The appropriate analysis for a facial challenge to subject matter jurisdiction, such as a challenge based on sovereign immunity, is similar to that which is required under Rule 12(b)(6). "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Id.* at 56–57. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations omitted, internal quotation marks omitted). A court generally will not "look beyond facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken." *Id.* A court may consider documents not expressly incorporated in the complaint if they are "integral" to the complaint. *Id*. A document is integral to a complaint "'where the complaint relies heavily upon its terms and effect.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Where, as here, plaintiffs proceed *pro se*, their "complaint[s], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Erickson v. Pardus,* 551 U.S. 89 (2007)). However, while a *pro se* complaint is "construed liberally … and interpreted to raise the strongest claims that it suggests," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)), it "must contain sufficient factual allegations to meet the plausibility standard" to survive a motion to dismiss under Rule 12(b)(6), *Allen v. Norman*, 548 F. App'x 25, 26 (2d Cir. 2013) (citing *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009)).

**Discussion**

Plaintiffs' sprawling 67-page Operative Complaint, to which Plaintiffs attached hundreds of pages of exhibits, is haphazard, confusing, and at times, utterly inscrutable. As a result, it is exceedingly difficult to ascertain the precise claims alleged by Plaintiffs, and the Defendants

against whom each claim is asserted.[5] Nevertheless, liberally construed, Plaintiffs appear to bring claims for: violations of the IDEA; unlawful disclosure of confidential DCF records; violations of the U.S Constitution arising under 42 U.S.C. § 1983 ("Section 1983"); violations of numerous state and federal "special education" and "child protection" laws; and negligence and/or negligent infliction of emotional distress. *See* Oper. Compl. Plaintiffs seek declaratory and injunctive relief, compensatory damages, punitive damages, attorney's fees, and costs.

In briefing their Motion, the State Defendants advance various grounds for dismissal. *See* Mem. Law Supp. Mot. Dismiss, ECF No. 88-1 [hereinafter "Mot. Br."]. The Court addresses each State Defendant in turn, setting forth the grounds upon which it bases its decision to dismiss the claims brought against them.

Claims Against the State of Connecticut and DCF

Plaintiffs assert state statutory and common law claims against the State of Connecticut and DCF, as well as claims brought pursuant to Section 1983. The State Defendants argue that the Eleventh Amendment bars suit against the State of Connecticut and DCF. Mot. Br. 7–9. The Court reaches the same conclusion.

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). This limitation is enshrined in the Eleventh Amendment, which abrogated the Supreme Court's decision in *Chisholm v. Georgia*, 2 Dall. 419 (1793). *See id.* at 97–98. The Eleventh Amendment provides:

---

[5] Plaintiffs appear to assert several claims against non-parties. Pursuant to the Court's January 19, 2026 Order, in which it granted Plaintiffs leave to file the Operative Complaint, any Defendant not identified in the case caption shall be terminated from the case. *See* Order, ECF No. 85. Accordingly, the Court does not consider the sufficiency of claims brought against individuals not named in the case caption.

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Amendment has been interpreted as barring suits in federal court against states by their own citizens, *see Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890); *see also Employees of Dep't. of Public Health & Welfare v. Dep't of Public Health & Welfare*, 411 U.S. 279, 280 (1973),

Under Eleventh Amendment immunity, private parties are barred from suing a state "unless that state has 'consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity.'" *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2001) (quoting *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir. 1990)). These immunity principles apply not only to suits against the states themselves, but also to suits against state agencies. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)) (citing *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001)) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state.").[6] Thus, as a state and state agency charged with the State's child-welfare function, *see* Conn. Gen. Stat. §§ 17a-1, 17a-2, 17a-3, suits against the State of Connecticut and DCF are barred absent consent or congressional abrogation of sovereign immunity.

Here, Congress has not divested Connecticut of its sovereign immunity as to the pendent state law claims or claims brought under Section 1983. *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990).[7] This leaves only the question of consent. In this vein, Plaintiffs argue the

---

[6] It is true that, "[u]nder the venerable doctrine of [*Ex parte Young*, 209 U.S. 123, 127 (1908)], a plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for 'prospective injunctive relief from violations of federal law.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citations omitted). However, this doctrine applies to state *officials*, not the state itself. Moreover, the relief sought here is monetary or retrospective in nature. Accordingly, the narrow exception recognized in *Ex parte Young* is inapplicable.

[7] The Court observes that Congress has abrogated the States' Eleventh Amendment immunity for claims arising under the IDEA. *See* 20 U.S.C. § 1403(a). However, such abrogation does not alter the analysis here because

Connecticut Claims Commissioner waived the State's sovereign immunity when it authorized suit pursuant to Conn. Gen. Stat. § 4-160. Oper. Compl. 5; *see* Claims Comm'r Decision.

"The test for determining whether a [s]tate has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). "A [s]tate's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." *Pennhurst*, 465 U.S. at 99–100. Any waiver of this immunity must be stated without equivocation. A state "does not consent to suit in a federal court merely by consenting to suit in the courts of its own creation … by stating its intention 'to sue and be sued,' … 'or even by authorizing suits against it in any court of competent jurisdiction.'" *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (quoting *Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Assn.,* 450 U.S. 147, 149–150 (1981); then quoting *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 577–579 (1946)) (citing *Smith v. Reeves*, 178 U.S. 436, 441–445 (1900).

Plaintiffs' reliance on the Claims Commissioner's authorization is misplaced. First, the Claims Commissioner only granted permission to sue to Ms. Abubakari—not Mr. Abubakari or U.A. *See* Claims Comm'r Decision. Second, the Commissioner's authorization extended only to suits in negligence. *Id.* And finally, while it provides that Ms. Abubakari may assert a negligence claim, it does not authorize Ms. Abubakari to adjudicate her negligence claim in federal court. *Id.* Indeed, the Commissioner had no such authority to waive the State's immunity in a federal forum. Section 4-160 provides that the Claims Commissioner may authorizes suit against the State only "in the judicial district in which the claimant resides," a clear reference to the state court structure. *See* Conn. Gen. Stat. § 4-160(i). Given that any statutory waiver of sovereign immunity must be

---

Plaintiffs' purported IDEA claims are asserted against HPS and Schenker, neither of which is a State Defendant, and not against the State of Connecticut or DCF. *See* Oper. Compl. 46–51.

strictly construed in favor of the State, courts within this district have routinely held that "the Claims Commissioner lack[s] the power to authorize suit by the plaintiffs directly against DCF in federal court." *See Est. of A.A. v. United States*, No. 3:15-CV-1479 (JCH), 2016 WL 7471634, at *4 (D. Conn. Dec. 28, 2016); *Doe v. Barrett*, No. 3:01-CV-519 (PCD), 2006 WL 3741825, at *7 (D. Conn. Dec. 19, 2006) (citations omitted) (holding "Connecticut law [ ] provides that the Claims Commissioner can only authorize suit in state court, not federal court"). The Court thus finds the Commissioner did not, and could not, consent to Plaintiffs' claims being brought against the State in a federal forum.

Accordingly, Plaintiffs' claims against the State of Connecticut and DCF are barred by the Eleventh Amendment and are therefore **DISMISSED WITHOUT PREJUDICE**.

<u>Claims Against AAGs Bevacqua Bollier and Bagot</u>

The State Defendants next argue that the claims against AAGs Bevacqua Bollier and Bagot must be dismissed under the doctrine of absolute immunity. Mot. Br. 11–15.

It is well established that "a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (citing *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). The immunity extended to government attorneys is defined by function rather than title and applied broadly, covering "virtually all acts, regardless of motivation, associated with [the government attorney's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 660–61 (2d Cir. 1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994)). Although often referred to as "prosecutorial immunity," this immunity extends to "executive officers initiating administrative proceedings, ... government attorneys defending civil suits, …

[and] government attorneys who initiate civil suits." *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992) (collecting cases).

Here, the allegations against AAG Bevacqua Bollier largely derive from her prosecution of the educational-neglect petition in the Superior Court for Juvenile Matters. *See* Oper. Compl. 23–25, 38–40. Plaintiffs allege that AAG Bevacqua Bollier filed the petition without adequate investigation or probable cause, prosecuted it for roughly seven months, and ultimately withdrew it. Each of these acts falls squarely within the function of an advocate for the State in child-protection proceedings and are therefore protected by absolute immunity. *See Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984) (extending absolute immunity to attorneys who "initiate[] and prosecute[] child protective orders and represents the interest of" the child-welfare authority); *see Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (quoting *Butz v. Economou,* 438 U.S. 478, 515 (1978)) (holding attorneys performing functions "analogous to those of a prosecutor" in family court neglect proceedings entitled to absolute immunity). That Plaintiffs allege the petition was baseless or retaliatory does not change the result, as absolute immunity attaches to advocacy "regardless of motivation." *Hill*, 45 F.3d at 661 (citation omitted).

The remaining allegations against AAG Bevacqua Bollier, and the whole of the allegations against AAG Bagot, concern AAG Bagot's alleged mischaracterization of the withdrawal while appearing before the Claims Commissioner and AAG Bevacqua Bollier's failure to correct those mischaracterizations. *See* Oper. Compl. 34–35. Because AAG Bagot's allegedly mischaracterizing statements were made in his capacity as an advocate for the State in the course of quasi-judicial proceedings,[8] Plaintiffs' claims against AAG Bagot are barred by absolute

[8] The Office of the Claims Commissioner's proceedings are adversarial and adjudicative in nature. A claimant files a notice of a claim, Conn. Gen Stat. § 4-147; the Attorney General appears for the State, *id.* § 4-149; the Commissioner may hold hearings, administer oaths, compel the attendance of witnesses, and take testimony, *id.* § 4-151; the State's opposition may be grounded in "jurisdictional grounds or prosecutorial, judicial, quasi-judicial or

immunity. And, to the extent AAG Bevacqua Bollier's alleged failure to correct AAG Bagot's statements amounts to her ratification of those statements– a question the Court need not reach – AAG Bevacqua Bollier's conduct relative to those proceedings are likewise shielded by absolute immunity.

Accordingly, all claims against AAGs Bevacqua Bollier and Bagot are barred by absolute immunity and are **DISMISSED WITH PREJUDICE**.

Claims against Falcone, Zane, and Hawkins

The precise causes of action Plaintiffs seek to assert against these DCF employees are utterly unclear. Plaintiffs allege Hawkins and Zane violated DCF's statutory and Policy Manual requirements when screening, supervising the investigation of, and substantiating the report of educational neglect. To the extent Plaintiffs seek relief based on violations of the cited statutes and/or internal procedures governing the investigation of neglect reports,[9] the Court is not aware of any private right of action created by the cited provisions. Indeed, there is a "presumption in Connecticut that private enforcement [of a statute] does not exist unless expressly provided in a statute." *Gerardi v. City of Bridgeport,* 294 Conn. 461, 468 (2010). The statutes relating to DCF obligations, investigations, and child protection matters cited by Plaintiffs contain no such provision. Further, Plaintiffs bear the burden of overcoming this presumption. *Noffsinger v. SSC Niantic Operating Company LLC,* 273 F.Supp.3d 326, 338 (D. Conn. August 8, 2017). Plaintiffs make no meaningful or cogent effort to do so. Indeed, the Connecticut Supreme Court has held that there is no private right of action against an employer under Conn. Gen. Stat. § 17a-101e

legislative immunity," *id.* § 4-160(g); and the Commissioner renders a decision applying law to fact, *id.* §§ 4-158, 4-160.

9 Plaintiffs cite to, *inter alia,* Conn. Gen. Stat. §17-28(a) and 101k(e ) which governs the confidentiality of DCF records and the hearing procedures and appeals process upon substantiation of a contested child protection matter.

where the statute authorized only the Attorney General to bring an action for an alleged violation. *Perez-Dickson v. City of Bridgeport,* 304 Conn. 483, 507-08 (2012). The same is true here. A violation of Conn. Gen. Stat. § 17a-28(a) may only be criminally prosecuted by the appropriate prosecuting authorities. *See* Conn. Gen. Stat. §17a-28(b). And, to the extent Plaintiffs seek relief under Section 1983 for these same alleged violations, a violation of state law (even if cognizable) is not, in and of itself, sufficient to support a civil rights claim under Section 1983. *See Old St. George's LLC v. Bianco*, 389 F. App'x 33, 35 (2d Cir. 2010) (quoting *Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir. 1985)). Section 1983 is "not a vehicle for claims arising under state law." *Sakon v. Connecticut,* 2025 WL 896832 *19 (D. Conn. March 24, 2025). Accordingly, any such claims are not cognizable and must be dismissed.

Plaintiffs further allege that, as a result of the alleged deficiencies during the investigation process, Zane and Falcone improperly substantiated the allegations of neglect and referred the case for prosecution. Reading the Operative Complaint liberally and in conjunction with Plaintiffs' Reply brief, Plaintiffs appear to also assert Section 1983 claims against Falcone, Hawkins, and Zane for malicious prosecution and deprivation of their parental rights without due process. *See* Reply Br. 26–30.[10] Each of the DCF employees argue the claims should be dismissed for failure to state a claim. Mot. Br. 21–27. The Court agrees.

First, "[t]o prevail on a [Section] 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, ... and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*,

---

[10] In their Reply, Plaintiffs identify the facts they contend support additional constitutional claims, as well as claims for intentional infliction of emotional distress, negligence, and unlawful disclosure of confidential DCF records. *See* Reply Br. 26–31. Plaintiffs cannot amend the complaint through briefing. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Further, Plaintiffs fail to specify the Defendants against whom each claim is asserted. *See* Reply Br. Accordingly, the Court limits its consideration to Plaintiffs' malicious prosecution and due process claims, given that they are the only claims based on conduct allegedly attributable to Hawkins and Zane.

612 F.3d 149, 160–61 (2d Cir. 2010) (collecting cases). However, "[w]here a plaintiff is charged in an administrative proceeding, but 'never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment,' there is no deprivation of liberty constituting a Fourth Amendment violation." *Grullon v. Admin. for Children's Servs.*, No. 18-CV-3129 (LJL), 2021 WL 981848, at *10 (S.D.N.Y. Mar. 16, 2021) (*Washington*, 373 F.3d at 317). While Plaintiffs allege U.A. was seized in violation of the Fourth Amendment in 2009, they do not claim he was removed from Mr. and Ms. Abubakari's custody as a result of the 2018 petition on which the claims against Hawkins, Zane, and Falcone are based. Indeed, their pleadings indicate that he remained with Mr. and Ms. Abubakari while the court proceedings took place. Accordingly, Plaintiffs have not stated a viable constitutional claim for malicious prosecution against the DCF employees.

Further, in order to state a due process claim, a plaintiff must allege "the existence of a federally protectable property right and the denial of such a right in the absence of either procedural or substantive due process." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999). Here, Plaintiffs argue that the DCF employees' conduct resulted in the denial of Mr. and Ms. Abubakari's "fundamental" parental rights, as recognized in *Troxel v. Granville*, 530 U.S. 57 (2000). However, Plaintiffs do not allege Hawkins, Zane, or Falcone denied them the right to "make decisions concerning the care, custody, and control of their children." *See id.* at 66. Instead, they argue they were improperly subjected to child-neglect investigations and related proceedings as a result of the DCF employees' inquiry into the parenting decisions they *did* make. The right to family integrity does not, as Plaintiffs appear to assume, encompass a general right to be free from child-welfare investigations. *See Brown v. Town of E. Haddam*, 213 F.3d 625 (2d Cir. 2000) (citing *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir.1993)) ("The right to family integrity clearly does not include a

constitutional right to be free from child abuse investigations"); *Shapiro v. Kronfeld*, No. 00 CIV.6286(RWS), 2004 WL 2698889, at *14 (S.D.N.Y. Nov. 24, 2004) (citation omitted). Thus, based on the allegations set forth in the Operative Complaint, Plaintiffs have not plausibly alleged a due process claim.

Therefore, Plaintiffs' claims against Falcone, Zane, and Hawkins are **DISMISSED WITH PREJUDICE**.

**Leave to Amend**

The Court is mindful of Plaintiffs' *pro se* status and has considered whether further leave to amend is warranted. The Operative Complaint is Plaintiffs' fourth, arguably fifth, effort at setting forth their claims. *See* Compl.; Am. Compl., ECF No. 35; Am. Compl., ECF No. 59; Oper. Compl. And as the Court has previously observed, "this case has become a complete procedural morass, largely due to Plaintiffs' inconsistent and contradictory filings, and their apparent inability or unwillingness to comply with the Court's instruction and the Federal Rules of Civil Procedure." Order, ECF No. 85. The Order in which this observation appears was the Court's effort to allow Plaintiffs one more chance to assert "a third proposed Second Amended Complaint." *Id.* That "third Second Amended Complaint" has now been dismissed as to the State Defendants. Leave to amend may be denied "when a party has been given ample prior opportunity to allege a claim." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 72 (2d Cir. 1996); *Nat'l Credit Union Admin. Brd. v. HSBC Bank US, Nat'l Ass'n,* 331 F.R.D. 63, 69 (S.D.N.Y. May 22, 2019)(same).

Further, the Court finds the deficiencies identified in Plaintiffs' pleadings, sovereign immunity and absolute privilege are substantive rather than matters of inartful pleading. Better pleading will not cure them, and therefore any further amendment would be futile. *See Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Donnelly v. United* States, 550 F. App'x 54, 55 (2d Cir. 2014). For all of these reasons, leave to amend is **DENIED.**

**Conclusion**

For all of the reasons set forth herein, the State Defendants' Motions to Dismiss, ECF No. 88, is **GRANTED**. The claims brought against the State of Connecticut and DCF are **DISMISSED WITHOUT PREJUDICE**. The claims against AAG Bevacqua Bollier, AAG Bagot, Hawkins, Zane, and Falcone are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE